IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


CHERYL SCHWARZWAELDER,    )
          )
    Plaintiff,    )
          )
    v.    )    Civil Action No. 04-1879
          )    Judge Terrence F. McVerry
MERRILL LYNCH & CO., INC.    )    Magistrate Judge Lisa Pupo Lenihan
and METROPOLITAN LIFE    )
INSURANCE CO.,    )
          )
    Defendants.    )


## REPORT AND RECOMMENDATION


## I.  RECOMMENDATION

It is respectfully recommended that the Motion for Summary Judgment filed by Defendants be denied.  It is also recommended that this Court adopt Plaintiff's suggestion that the case be remanded to the Administrator for clarification of the long-term disability standard applied - *i.e.*, clarification of the Administrator's interpretation of the Plan language - and, if necessary, a redetermination of eligibility.[1]  Finally, it is recommended that Defendants' Motion to Strike Plaintiff's Affidavit be denied.

---

1. See Plaintiff's Reply to Defendant's Response to Brief in Opposition to Motion for Summary Judgment ("Plaintiff's Reply") at 7 (proposing that the Court remand for further administrative review, including definition of disability as encompassing incapacity from *one or more* regular job duty or *each and every* regular job duty).

## II. __REPORT__

This case involves the question of a plan claim administrator's denial of long-term

disability benefits to a financial consultant.  The consultant alleges eligibility under the language

of a plan providing such benefits - for a maximum of twenty-four (24) months - to an employee

who is "unable to perform all the regular duties of the job" and under the "continuous care" of a

treating physician.  <u>See</u> Defendant's Motion for Summary Judgment at ¶ 8 (citing to Ex. B).

Because this Court is unable, on the record before it, to undertake meaningful substantive

review, Defendants' Motion for Summary Judgment should be denied and the case remanded to

the Administrator.  In addition, because the Affidavit filed by Plaintiff  in conjunction with her

Brief in Opposition to Defendant's Motion for Summary Judgment did not seek to improperly

amend the administrative record (*i.e.*, the record on which this Court must base its substantive

review), and because it is recommended that the Court decline substantive review on this record,

Defendant's Motion to Strike that Affidavit should be denied.

### A. __Statement of Facts and Procedural History__

The long-term disability benefit plan at issue ("the Plan") was established by Plaintiff's

employer, Defendant Merrill Lynch & Company, Inc. ("Merrill Lynch"), and is self-funded by

Merrill Lynch, with claims administered by Defendant Metropolitan Life Insurance Company

(the "Claims Administrator" or "Administrator").  The Plan confers upon the Administrator

discretion as to both Plan interpretation and determinations of benefit eligibility.  It is governed

by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, et seq. ("ERISA").

Plaintiff Cheryl Schwartzwaelder ("Plaintiff") was actively employed by Merrill Lynch for approximately one year, *i.e.*, from approximately November 14, 2002 through November 3, 2003, as a high-end broker and financial consultant responsible for approximately $400-$500 Million in assets.[2]  Plaintiff represents that she became unable to continue in her high-stakes, high-pressure, high-performance-requirements position owing to increasing mental health difficulties,[3] and that she therefore ceased work and sought disability benefits.[4]

The medical records before the Claims Administrator indicate that Plaintiff sought treatment with Dr. Goubert, a psychiatrist, and was seen approximately every two weeks from November, 2003 through the time of her March, 2004 disability claim review.  Those records further reflect Plaintiff's Beck Depression Inventory and Initial Psychiatric Evaluation documents; Dr. Goubert's treatment notes; Plaintiff's Patient Health Questionnaires; and Dr.

_____

2.  Prior to her employment with Defendant Merrill Lynch, Plaintiff was employed by Smith Barney, and was recently the subject of multiple charges before the NASD.  See Plaintiff's Brief in Opposition to Motion for Summary Judgment ("Plaintiff's Brief in Opposition") at ¶ 14.  At Merrill Lynch, she was responsible for generating $1.8 to $2.4 Million in new revenues annually. See id. at ¶ 18.

3.  See Plaintiff's Brief in Opposition at ¶ 11 (asserting that Plaintiff's job "required the very highest level of energy, competence, initiative and confidence").  Cf. Rosenthal v. The Long-Term Disability Plan of Epstein, Becker & Green, P.C., 1999 WL 1567863 (C.D. Cal. Dec. 21, 1999) (noting the particularly high levels of heavy stress and long hours of a trial attorney in concluding that administrator improperly denied benefits and failed to adequately consider requirements of claimant's position).

4.  Plaintiff represents that in so doing she "effectively relinquished" her business accounts, and her "extremely lucrative income" therefrom to Merrill Lynch.  Id. at ¶ 24.  Compare note 5, *infra*; with Defendant's Response at 5 (asserting the "inescapable truth" that Plaintiff's "alleged mental disability was nothing more than a means by which she could avoid stress of the workplace and/or charges brought against her at her prior job").

Goubert's March 8, 2004 Attending Physician Statement.[5]  Plaintiff also reports an extensive

regimen of pharmaceutical mental health treatment, including Lexapro, Wellbutrin, Xanax,

Synthroid and Ambien.[6]

Plaintiff received short-term disability benefits from her employer for approximately

three (3) months and her disability claim was referred to the Claims Administrator on February

20, 2004.  The Administrator denied her claim approximately six weeks later, on April 7, 2004,

by correspondence informing Plaintiff that there was insufficient documentation to support a

significant "functional impairment that would prevent Plaintiff from performing all the regular

duties of her job."  See Defendants' Motion for Summary Judgment ("Defendants' MSJ") at ¶¶

13-14.

On April 19, 2004, Plaintiff's counsel notified the Administrator of Plaintiff's desire to

appeal its denial of benefits, after which the Administrator obtained a medical file

review/assessment from Mark Schroeder, M.D., a psychiatrist, who concluded that Plaintiff had

failed to establish an "impairment that would preclude all duties".  See Defendants' MSJ at ¶ 18.[7]

---

5.  Dr. Goubert diagnosed Plaintiff with major depression.  Id. at ¶ 29.  His notations included decreased concentration, organizational ability, and memory, together with inability to engage in stress situations or interpersonal relations.  See Plaintiff's Brief in Opposition at ¶¶ 31, 37.

6.  The Court notes that multiple courts have held that an administrator abuses it discretion when it fails to consider the effects of a claimant's pharmaceutical regimen.  See, e.g., Adams v. Prudential Ins. Co. of Am., 280 F.Supp.2d 731, 740-41 (N.D. Ohio 2003).

7.  It should perhaps be noted that Dr. Schroeder also concluded that the information on Plaintiff's personal and work history contained in the records suggested that Plaintiff was "choosing to avoid work stresses", i.e., making a free/fully voluntary decision to discontinue employment for reasons unrelated to medical disability, rather than suffering a mental health disability that involuntarily affected her employment-related abilities/skills.  See Defendants' MSJ at ¶ 33; Defendant's Brief in Support of Motion for Summary Judgment ("Defendant's

(continued...)

The Claims Administrator also obtained a medical file review/assessment from John Shallcross, Psy.D., a psychologist, who (a) concluded that the credible record of Plaintiff's symptoms was insufficient to support a diagnosis of a major depressive disorder and (b) criticized a testing-based diagnosis of Plaintiff as suffering an adjustment disorder with a marked decline in intellectual/cognitive abilities.[8]

The Administrator upheld its denial of benefits on September 23, 2004, reiterating that the medical record evinced no substantiated impairments that would "'preclude [plaintiff] from performing all of the regular duties of her Merrill Lynch job' . . . as required by the definition of

---

7.  (...continued)
BSMSJ") at 10 (quoting Dr. Schroeder's conclusion that "[t]he fact that the [plaintiff] had noted on a number of occasions significant dissatisfaction with her 'work stress' and with conflict at work supports that the [plaintiff's] continued absence from work may be due to a choice to avoid the perceived stress of the workplace as opposed to impairment").

    Dr. Schroeder's further notations present one of several suggestions in the record, and in Defendants' pleadings, of an inappropriate consideration of the *etiology* of Plaintiff's alleged mental health disability.  See, *e.g.*, Defendant's BSMSJ at 11 (citing MetLife's decision to uphold the denial of benefits and referencing "[a] number of marital, legal and work issues" described by Plaintiff to her treating physicians, as well as complaints of work harassment"); Plaintiff's Reply at 5.  Defendant also appears to engage in some interesting *non sequiturs*.  See, *e.g.*, Defendant's MSJ at ¶ 32 (asserting that a physician's acknowledgment that a patient's mental health is affected by external stress factors belies the patient's claim of mental health disability); Defendant's BSMSJ at 16-17 (same).

8.  The file reviewed by Dr. Shallcross included a neuropsychological evaluation and "neurocognitive testing" performed on May 27, 2004 by Plaintiff's psychologist, Michael Franzen, Ph.D.  Dr. Franzen reached the conclusions criticized in Dr. Shallcross' paper review. See Defendant's Brief in Support of Motion for Summary Judgment ("Defendant's BSMSJ" at 7-8).  Compare Plaintiff's Brief in Opposition at 29 (citing Dr. Franzen's conclusion that Plaintiff's mental condition would "significantly interfere with and limit her ability to perform at a high level of functioning she previously reported").

disability in the Plan."  <u>See</u> Defendant's MSJ at ¶ 21.[9]  Defendants' pleadings further indicate that

the Administrator's denial of benefits was premised in whole or in part on the following: an

absence of "severe psychiatric symptoms"; an absence of detailed cognitive evaluations; an

insufficiency of objective findings to substantiate Plaintiff's self-reported symptoms/disabilities;

Plaintiff's March, 2004 reported improvement and her denial of depression; asserted

inconsistencies in the treating physician's statements of functional limitations; and the opinions

of the Administrator's two expert consultants.  <u>See</u> Defendants' Brief in Support at 5-9.

The Plan provides that an employee is "totally disabled" for purpose of entitlement to

long-term disability benefits if s/he is "unable to perform all of the regular duties of the Merrill

Lynch job [s/he] had before [the] disability began" and is "under the continuous care of a doctor

treating . . . within the scope of his or her speciality".  It also limits an employee's entitlement to

benefits owing to mental health disability to a maximum period of twenty-four (24) months.

### B. <u>Motion for Summary Judgment Standard</u>

Under Rule 56(c) of the Federal Rules of Civil Procedure, a court should grant summary

judgment  when "there is no genuine issue as to any material fact and [ ] the moving party is

entitled to judgment as a matter of law."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>see</u>

<u>also</u> <u>Eichenlaub v. Township of Indiana</u>, 385 F.3d 274, 279 (3d Cir. 2004).  In considering a

---

9.  <u>Compare</u> Plaintiff's Brief in Opposition at ¶¶ 26-27, p. 26 (attesting that Defendants never
asked Plaintiff about her specific job duties, the "full scope" of her position, or the level at which
she was expected to perform) <u>with</u> September 23, 2004 MetLife letter (noting that Plaintiff's
"occupation as a financial consultant is categorized as a sedentary exertion level occupation").

 <u>Cf.</u> <u>Lasser v. Reliance Standard Life Ins. Co.</u>, 244 F.3d 381, 386 (3d Cir. 2003) (defining
regular occupation as "the usual work that the insured is actually performing immediately before
the onset of disability").

motion for summary judgment, the Court views all evidence in the light most favorable to the party opposing summary judgment.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 465 U.S. 574, 587 (1986).

C.  <u>Standard of Review of Claims Administrator's Determination</u>

As noted in Defendants' MSJ, absent a conflict of interest (as where, for example, a self-funding employer also administers its plan and makes benefit determinations as to which it has competing interests), a Claims Administrator's interpretations of plan language and benefit determinations are generally subject to an "abuse of discretion" or "arbitrary and capricious" standard of review.  <u>See</u> <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989).  Both of these phrases are understood to require a reviewing Court to affirm the administrator unless an underlying interpretation or benefit determination was unreasonable, irrational, or contrary to the language of the plan.  <u>See</u> Defendant's MSJ at ¶ 25; <u>id.</u> at ¶ 30 ("As long as there exists at least a reasonable ground for the claim determination, that determination must be upheld."); Plaintiff's Brief in Opposition at 24 (noting that the Court must defer to the administrator unless its decision is "clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan") (quoting <u>Abnathya v. Hoffman LaRoche, Inc.</u>, 2 F.3d 40, 41 (3d Cir. 1993)).  <u>Cf.</u> Defendant's MSJ at ¶ 36 (articulating standard as whether Administrator's determination was "reasonable and supported by substantial evidence"); Defendant's BSMSJ (same) (defining "substantial" evidence as "relevant evidence [that] reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions") (quoting <u>Snow v. Standard Ins. Co.</u>, 87 F.3d 327, 331 (9th Cir. 1996)).

It is, however, not entirely clear from the parties' summary judgment pleadings that the Claims Administrator's determinations are entitled to an unmodified "arbitrary and capricious" standard of review.[10]  Although Defendants' Motion for Summary Judgment represents that the Plan is "self-funded" by Merrill Lynch, it is not clear, *e.g.*, whether, under the sponsoring employer's arrangement with the Defendant insurance company claims administrator, any risk of loss resides with Metropolitan Life Insurance Company.  See generally, *ERISA: No Further Inquiry Into Conflicted Plan Administrator Claim Denial,* 58 Okl. L. Rev. 637, n. 95 (Winter 2005) (discussing myriad potential plan funding arrangements, including segregated trusts, purchases of insurance, and combinations thereof; as well as funding on a case-by-case versus fixed price, actuarially-determined basis); id. (noting that who pays benefit claims and from what source, *e.g.*, employer's general treasury, segregated trust, or insurance, impacts whether the arbitrary and capricious standard should be applied without modification or modified to some degree of lesser deference); id. (citing Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377 (3d Cir. 2000) (establishing "sliding scale" of deferential review and discussing effects of structural conflicts of interest and procedural anomalies)).[11]  See also Addis v. The Limited Long-Term Disability Program, 425 F.Supp.2d 610,  (E.D. Pa. 2006) (discussing plan "self-insured" by plaintiff's employer but contracted with MetLife, and considering "procedural anomalies in MetLife's treatment of the evidence" in determining appropriate of standard of review).

_____

10.  Compare Defendant's BSMSJ at 14.

11.   Under Pinto, the factors considered in setting the sliding scale include (1) sophistication of the parties, (2) information accessible to the parties; (3) exact financial arrangements between the insurer and the company; and (4) status of the administrator.  The Court may also look to procedural abnormalities, biases or unfairness in determining the level of scrutiny applied to an administrator's decision.  See 214 F.3d at 392.

In light of this Recommendation's conclusion that the case be remanded to the Claims Administrator owing to an indeterminate record of the Administrator's disability standard, it is unnecessary at this time to resolve more precisely the standard of review under which the Court may ultimately assess the Administrator's decision.  The Court merely brings this consideration to the parties' attention.

**D.   Analysis**

1.  Plan Interpretation and Benefit Denial

As discussed, *supra*, the Plan language at issue states that it will provide long-term disability benefits to an employee who is "unable to perform all the regular duties of [her] . . . job" and is under the "continuous care" of specialist.

Defendants' Motion for Summary Judgment suggests that the Claims Administrator interpreted this language to mean that an employee is only entitled to disability benefits if s/he is unable to perform *each and every* regular job duty.  That is, this pleading appears premised on an interpretation of the Plan that disqualifies an employee from disability benefits if s/he remains able to perform any one regular job duty.   See, *e.g.*, Defendants' MSJ at ¶¶ 32, 34 (repeatedly noting Plaintiff's failure to establish that she was "unable to perform **all** of the regular duties of her job") (emphasis continually in original); Defendant's BSMSJ at 16 ("It was plaintiff's obligation to submit evidence of her total disability as required by the Plan.  In particular, plaintiff had to demonstrate that she is unable to perform **all** the regular duties of her job due to her alleged severe psychiatric functional impairment.") (emphasis in original).[12]

---

12.  Cf. Plaintiff's Brief in Opposition at 25 ("A fundamental flaw with Defendant's Motion, and with the underlying denial of benefits, is the obvious but unarticulated assumption that [Plaintiff]
(continued...)

9

On the other hand, a far more generous disability standard ensues if one gives the phrase "unable to perform all" a different interpretation.  For if one understands "*un*able to perform all" as the negation of "able to perform all", an employee is entitled to disability benefits if s/he is *un*able to perform any one or more of the regular job duties.[13]  Under this standard, if the medical records clearly establish an inability to perform any *one* of the regular job duties, it may be

_____

12.  (...continued)
must be able to demonstrate that she cannot perform <u>any</u> and <u>all</u> of her regular duties.")
(emphasis in original); <u>id.</u> at 26 (asserting that Defendants created a "straw man", *i.e.*, a much
higher standard "not contained within the Plan").

The Court notes the vast number of disability benefit plans that have elected to condition
benefits on a more clearly restrictive standard, such as an inability to perform "each and every"
regular or material job duty, and even an inability to perform not only in the employee's own
position, but in any position in his/her occupational field or for which s/he is qualified.  <u>See, *e.g.*</u>,
<u>Kaelin v. Tenet Employee Benefit Plan</u>, 2006 WL 2382005 (E.D. Pa. Aug. 16, 2006) (referring to
applicant's inability "to perform each and every material duty of his/her regular occupation");
<u>Carrigan v. Reliance Standard Life Ins. Co.</u>, 55 Fed. Appx. 630 (4th Cir. 2003) (similar);
<u>Arbanas v. Metropolitan Life Ins. Co.</u>, 2006 WL 889499 (N.D. Cal. Apr. 5, 2006) (requiring that
employee be "unable to perform any and every duty of [her] own occupation").  Many plans also
condition continuing benefits on disability from work for which the employee could become
qualified by training, education or experience.  <u>See, *e.g.*</u>, <u>Addis v. The Limited Long-Term
Disability Program</u>, 425 F.Supp.2d 610 (E.D. Pa. 2006) (granting summary judgment to plan
participant under plan that defined eligibility during first year as "under a doctor's regular care"
and "'unable to perform all duties' of her regular occupation", and disability thereafter defined as
unable to perform the duties of "any gainful occupation for which [plaintiff is] reasonably
qualified by education, experience or training").

13.  <u>Compare</u> Defendant's MSJ at ¶ 35 (describing interpretation of "unable to perform *all*" to
mean "unable to perform *any*" as "[a]ffording the terms and provisions the Plan their plain and
ordinary meaning").  <u>Cf.</u> <u>Lasser v. Reliance Standard Life Ins. Co.</u>, 344 F.3d 381, 387 (3d Cir.
2003) (holding it unreasonable for administrator to define "regular occupation" differently from
its plain meaning or even the somewhat more relaxed understanding of prior cases without
explicitly including that different definition in the policy).  <u>Cf. also, generally</u>, <u>Saltarelli v. Bob
Barker Group Med. Trust</u>, 35 F.3d 382, 387 (9th Cir. 1994) (noting that under ERISA federal
common law the doctrine of reasonable expectations applies).

unreasonable for the Claims Administrator to deny benefits.  And Defendants' Response to

Plaintiff's Brief in Opposition ("Defendants' Response") appears to strongly assert that the Claims

Administrator was applying *this* interpretation of the Plan.  See Defendants' Response to

Plaintiff's Brief  in Opposition ("Defendants' Response") at 2 (dismissing this Plan interpretation

question as a "non-issue" because "MetLife did not deny plaintiff's claim on the ground that she

could perform some of her regular duties and therefore was not disabled under the Plan"); id.

(apparently asserting, less clearly, but taking the paragraph as a whole, that the claim was denied

because Plaintiff failed to establish that she was precluded from performing *any one* of her

regular duties); id. at 3 (disputing a question of "any versus all" in the case).[14]

_____

14. Defendants' protestations to the contrary notwithstanding, the Court is struck by the apparent
turn-about of position in Defendants' Response.  More particularly, not only does the term "all"
no longer appear in **boldface** in Defendants' Response, the now-disfavored word has been
frequently expunged from the pleading's references to the subject standard, *i.e.*, an inability to
"perform the regular duties of the job".  See id. at 5; see also id. at 3 (referring to Plaintiff's
"performing the duties of her job"); id. (asserting insufficient evidence of a mental impairment
preventing "plaintiff from performing her job"); id. at 7; id. at 13; id. at 14.  But see id. at 8
(citing Dr. Schroeder as opining insufficient evidence that plaintiff was precluded from
"performing all the duties of her job"); id. at 10 (asserting that question consultants addressed
was whether plaintiff was precluded from performing all regular job duties); id. at 12; id. at 14.

    In addition, the Court is struck by the internal inconsistencies in Defendants' Response, which
begins with a refutation of any question of plan interpretation requiring disability from *every* job
duty, but evolves into discussion of the evidence which appears, in its emphasis, to again suggest
that stricter standard.  See, *e.g.*, Defendant's Response at 6 (discussing the insufficiency of
Plaintiff's self-reported symptoms on the Beck Depression Inventory as, *e.g.*, "she had less energy
(not that she does not have enough energy to do anything)", and "it is hard to keep her mind on
anything for very long (not that she cannot concentrate on anything), and "she gets tired or
fatigued more easily than usual (not that she is too tired or fatigued to do most of the things she
used to do)").

In attempting to ascertain the standard applied, the Court has looked to the underlying documents of record.  It finds, however, that (a) Defendants' benefit denial statements provide no elucidation of its interpretation of the Plan language and (2) Defendants' consultation records are either ambiguous as to the standard applied (because, *e.g.*, they simply reiterate the Plan language) or suggest that the consultants understood Plaintiff to be disqualified from benefits if she retained *any* job capacity. See, *e.g.*, Defendant's MSJ at ¶ 18 (noting that Dr. Schroeder "opined that the medical documentation did not substantiate psychiatric functional impairment that would preclude plaintiff from performing all the duties of her job"); Defendant's BSMSJ at 9 (quoting Dr. Schroeder's assessment that the medical records "did not document severe psychiatric symptoms, such as suicidal or homicidal thoughts of intent or plan, psychotic of [sic] manic symptoms, or severe panic attacks with agoraphobia that may reasonably support severe impairment");  Defendant's BSMSJ at 8 (citing Dr. Shallcross' opinion that Plaintiff's "limited observed symptoms . . . are certainly not of a severity that would indicate *preclusion of all work capacity*") (emphasis added).[15]

Thus, as a result of (1) the arguable ambiguity of the Plan language at issue; (2) Defendants' patently inconsistent positions before this Court on summary judgment; and (3) the failure of the record evidence - including the Claims Administrator's documentation of its benefits denials and the expert opinions obtained during its internal appeal process - to clarify the

---

15.  These statements, in particular, suggest that Defendants' consultant conflated disability under the Plan with general disability for, *e.g.*, purposes of Social Security benefits, and improperly elevated the qualifying threshold in evaluating Plaintiff's medical records.  An administrator may not, of course, reasonably base a benefit denial on the opinion of a consult who "reads out" the "disability from own occupation" parameters of the disability benefit plan.

scope of the Claims Administrator's consideration of Plaintiff's regular job duties and the extent to which she remained able to perform those specific duties; the Court is unable to determine with sufficient certainty the standard of benefit eligibility applied by the Claims Administrator. Because the Court is unable to ascertain the benefit standard adopted by the Claims Administrator, it is unable to consider either (1) the reasonableness/rationality of the Administrator's interpretation of the Plan language, or (2) the reasonableness/rationality of the Administrator's denial of benefits under the standard applied.  It is therefore recommended that, in accordance with Plaintiff's suggestion, the case be remanded to the Claims Administrator for an express statement of its interpretation of the Plan language and, if the Administrator then deems necessary, reconsideration of Plaintiff's disability claim in light of that interpretation in the first instance.  See Kaelin, 2006 WL 2382005, *4 (E.D. Pa. Aug. 16, 2006) (noting that remand is appropriate where the administrator has "'fail[ed] to make adequate findings or to explain adequately the grounds of [its] decision'") (quoting Caldwell v. Life Ins. Co. of N. Am., 287 F.3d 1276, 1299 (10th Cir. 2002)); id. at * 6 (holding remand "also appropriate" where record was "unclear" and contained "limited information about" relevant criteria, and administrator's "earlier decisions" - including previous denial letters - "did not adequately resolve the issue"); Gallo v. Amoco Corp., 102 F.3d 918, 923 (7th Cir. 1996) (stating that the "remedy when a court or agency fails to make adequate findings or to explain its grounds adequately is to send the case back to the tribunal for further findings or explanation . . . unless the case is so clear cut that it would be unreasonable for the plan administrator to deny the application for benefits on any ground"); Vizcaino v. Microsoft Corporation, 120 F.3d 1006, 1013-1014 (9th Cir. 1997)

13

(remanding and directing that plan administrator "who has the primary duty of construction", has "right and duty" to decide interpretation of plan language in the first instance); id. (declining to interpret plan phrase at issue and noting that Court "would set a poor precedent were [it] to intrude upon that exercise of discretion").  Cf. Kaelin, 2006 WL 2392005, *4 (observing that "[w]hile the Third Circuit has not been called upon to define the precise contours of remand's applicability in ERISA cases, it has utilized this remedy" where "'the administrator misperceived its task'") (quoting Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Employee Health and Welfare Plan, 298 F.3d 191, 193 (3d Cir. 2002)); Evans v. Metropolitan Life Ins. Co., 358 F.3d 307, 312 (4th Cir. 2004) (remanding to administrator for redetermination when claim was denied based on application of incorrect elimination period); Kaelin, supra (remanding on conclusion that administrator "appli[ed] the wrong standard").[16]

---

16.  Further support for the appropriateness of remand in this case may be found in, e.g., the Fourth Circuit's decision in Bernstein v. Capitalcare, Inc., 70 F.3d 783 (4th Cir. 1995):

> [T]he initial issue in this appeal is whether the administrative record before [the administrator] at the time of the benefit determination contained sufficient evidence to allow the district court adequately to assess the reasonableness of the plan's decision. This threshold inquiry ensures the plan beneficiary that he or she receives procedural fairness under the plan and that the plan administrator's decisions are principled and deliberate.  If the district court is to conduct meaningful appellate review of a benefit determination, even under a deferential standard, the administrative record must document the decision-making process.  If the evidence before the plan administrator is inadequate, the district court should remand the case to the administrator to receive additional evidence and make a new determination.

70 F.3d at 789 (citing Sheppard & Enoch Pratt Hosp. v. Travelers Ins. Co., 32 F.3d 120, 123 (4th Cir. 1994)).

14

The Court notes prospectively that an assessment of the reasonableness/rationality of an interpretation of the Plan's use of the term "all" to mean "each and every" could pose a sticky wicket.  That is, its preliminary research on the matter suggests that this would be a novel question of law before this Court and the Court of Appeals for the Third Circuit, and that it is one on which other courts have reached varying conclusions.  Compare, *e.g.*, Kalish v. Liberty Mutual/Liberty Life Assurance Co. of Boston, 419 F.3d 501, 506-507 (6th Cir. 2005) (concluding that continuing ability to perform sedentary work could not support denial of benefits  under plan defining qualifying disability as "unable to perform all of the material and substantial duties of his occupation", where position was not exclusively sedentary); id. (noting that Plan "explicitly stated that a participant is disabled so long as "he is unable to perform *all* the material and substantial duties of *his* occupation") (emphasis in original); Seitz v. Metropolitan Life Ins. Co., 433 F.3d 647 (8th Cir. 2006) (reheating and rehearing *en banc* denied) (holding that employee was totally disabled within meaning of plan definition as "unable to perform all material aspects of [participant's] occupation" where employee was able to meet some, but not all, of job requirements); id. at 651 (concluding that plaintiff "was physically unable to fulfill at least one material aspect of his job"); id. (rejecting arguments that plaintiff was not disabled because he could still do "*some* material aspects of his job" or because he could still do "*all* of the material aspects of his job, albeit to a limited degree"); id. (distinguishing plans that define disability with reference to claimant's own position from those that define it with reference to broader parameters, such as occupation in general) with Grossman v. Wachovia Corp., 2005 WL 2396793, *2 n. 2 (E.D. Pa. Sept. 27, 2005) (concluding that plan language - defining total

disability as inability "to perform all of the material and substantial duties of his or her own or any other occupation for which he or she is or becomes reasonably fitted by training, education and experience" - requires that a claimant be able to perform "none of the duties of her own or any other occupation");[17] Ellis v. Liberty Life Assurance Co. of Boston, 394 F.3d 262 (5th Cir. 2005) (concluding that correct interpretation of benefit eligibility defined as "unable to perform all of the material and substantial duties of [claimant's] occupation" was an inability to perform "each and every job duty" rather than any one).  Cf. Krop v. AIG Life Ins. Co., 86 Fed. Appx. 567 (4th Cir. 2004) (discussing underlying definition of disability as "if, while unable to perform all the material duties of his regular occupation or another occupation, the insured was performing at least one of such duties and was earning less than 80% of his pre-disability earnings").

The Court also observes that, whatever the Administrator's interpretation of the term "unable to perform all", the Plan appears to unambiguously require a fair assessment of Plaintiff's abilities as they pertain to the scope and nature of her particular position, and that the present record does not clearly reflect this position-specific assessment.  See Defendant's MSJ at ¶ 10 (referring to Plaintiff's employment as "the sedentary position of Financial Consultant"); ¶ 33 (referring to Plaintiff's failure to support her claim of a disability "severe enough to prevent her

---

17.  Although the District Court found Russell v. Paul Revere Life Ins. Co., 288 F.d 78 (3d Cir. 2000) to be "instructive", this Court notes that decision is distinguishable and does not decide the question of plan interpretation which may be raised by the case *sub judice*.

from performing her sedentary job"); Defendant's BSMSJ at 17 (same).[18] See also *supra*, n. 7

(noting that MetLife's denial correspondence of September 23, 2004 described Plaintiff's job

duties only as a sedentary Financial Consultant position); Plaintiff's Reply at 3 ("The starkness of

the sentence about the nature of Plaintiff's duties underscores the absence of meaningful analysis

. . . and the absence of any factual basis for concluding Plaintiff did not meet the definition of

disability."); Plaintiff's Response to Defendant's Motion to Strike Affidavit at 2 (asserting that

Defendants' disability evaluation process is "cookie-cutting", with no clear definition of

"disability" and no consideration of the job-specific duties Plaintiff did or did not have to be

capable of performing).[19]  ERISA case law is replete with considerations of the reasonableness of

benefit denials turning on an administrator's determination of, *e.g.*, the relevancy/materiality of

---

18.  Cf. id. at 8 (citing Dr. Shallcross' conclusion that the medical evidence did not "indicate preclusion of all work capacity"); Defendant's Response at 5-6 (observing that "[a]t best, plaintiff's self-described condition showed her functioning at a somewhat decreased level that did not prevent her from performing [activities of daily living]").

19.  Compare Plaintiff's Brief in Opposition at 1-2 (noting that disability from performing the regular duties of Plaintiff's job is not the same question as disability from performing any sedentary job); id. at 31 (asserting that at no point did either of Defendants' consultants speak in any detail about Plaintiff's actual job duties, and noting that no description of Plaintiff's position appears in the Motion for Summary Judgment) with Defendants' Response at 3 (asserting that Plaintiff completed a March 8, 2004 Long Term Disability Employee Personal Profile that permitted narrative job-description responses, and that this form was provided to the consultants and referenced in their reports) (no record citations provided).  Cf. Weinberger v. Reliance Standard Life Ins. Co., 54 Fed. Appx. 553, 556 (3d Cir. 2002) (finding use of generic job description inappropriate, particularly in light of employee's provision, with disability claim, of description of actual job requirements); Lindquist v. Continental Casualty Co., 394 F.Supp.2d 1230, 1250-51 (C.D. Cal. 2005) (reversing denial of benefits where administrator minimized job responsibilities and ignored evidence of plaintiff's own job functions).

specific, individual, regular job duties; each of those cases suggests a record far more developed than the one presently before this Court.[20]

2.  Affidavit Submitted in Support of Plaintiff's Brief in Opposition

As noted, *supra*, Defendants have also moved to strike the Affidavit submitted to this Court by Plaintiff as an improper supplement to the administrative record.  See Defendant's Response at 2 & n. 1 (citing Mitchell v. Eastman Kodak Co., 113 F.3d 433 (3d Cir. 1997)); Defendants' Motion to Strike Affidavit.

The Court agrees with Plaintiff's position in this matter, *i.e.*, that the Affidavit was submitted not "for purposes of supplementing the record but rather for the purpose of 'highlighting' that the record is entirely devoid" of a reasonable, regular-job-duty based, benefit qualification assessment.  See Plaintiff's Response to Defendants' Motion to Strike Affidavit. That is, the Affidavit was submitted not with the intent that the Court consider the specific features of Plaintiff's position in substantively reviewing the reasonableness of the benefit denial, but with the intent of illustrating to the Court the types of job-specific information which Plaintiff alleges to have been inappropriately and unreasonably omitted from MetLife's claim

20.  Cf. Kaelin, 2006 WL 2382005, * 8 (directing, on remand, that administrator consider job duties of regular occupation, materiality, and claimant's ability to perform; and that to aid in reaching these decisions, claimant should submit additional evidence and administrator conduct additional investigation).

Cf. also Halpin v. W.W. Grainger, Inc., 962 F.2d 685, 689 (7th Cir. 1992) (explaining that ERISA regulations governing required contents of benefit denials "are designed to afford the beneficiary an explanation of the denial of benefits that is adequate to ensure meaningful review of that denial"); id. (further noting that documents should be sufficient to enable claimant to "appeal to the federal courts"); Friess v. Reliance Standard Life Ins. Co., 122 F.Supp.2d 566, 574-75 (discussing negative decision on inadequate information and incomplete investigation as supporting greater scrutiny of administrator's decision under Pinto).

review.  Consideration for this purpose - *i.e.*, assessment of the scope of an Administrator's benefit inquiry - does not conflict with the underlying requirement that the Court's "ultimate determination" of the reasonableness of a benefit denial must be based "on the record before the plan administrator".  <u>Cf.</u> Defendants' Motion to Strike Affidavit at 3-4 (quoting <u>Koshiba v. Merck & Co.</u>, 384 F.3d 58, 69 (3d Cir. 2004)).  For whether the Administrator reasonably undertook its claim-processing obligations (*i.e.*, whether the record suggests a procedural irregularity), and whether its benefit determination was reasonable on the facts before it, are related but distinct considerations.[21]

Moreover, the recommendation that the Court defer a substantive review of the Claims Administrator's benefit determination for the reasons aforesaid renders Defendant's Motion to Strike moot.


## III. <u>CONCLUSION</u>

For the reasons set forth above, it is recommended that the Motion for Summary Judgment be denied and that the case be remanded to the Claims Administrator for an express

---

21.  Defendants' extensive citations to cases addressing the latter are therefore inapposite.  <u>Cf.</u> Defendants' Motion to Strike Affidavit at 4-5 & n. 1.

The Court also notes that Plaintiff's Affidavit seems an apt response to Defendants' repeated assertion, in its pleadings, that an appropriate consideration of Plaintiff's job was as that of a "sedentary" financial consultant.  <u>Cf.</u> <u>Weinberger v. Reliance Standard Life Ins. Co.</u>, 54 Fed. Appx. 553 (3d Cir. 2002) (vacating and remanding grant of summary judgment where aspects of decision-making procedure were "troubling", including assumption of sedentary position versus consideration of particular job requirements).

19

interpretation of the Plan language at issue and, if necessary, reconsideration of Plaintiff's benefit claim in the first instance.[22]   The Court suggests that, if the Administrator adheres to its denial of benefits, it clearly define the Plan interpretation applied, and articulate its basis for denial with reference to Plaintiff's individual job requirements.   Although the present action may be administratively terminated if the District Court adopts this Report and Recommendation, the undersigned will recommend that the District Court include in its order that either party may re-open this matter at the same civil action number by filing a motion to re-open within 30 days after a new decision by the plan fiduciary.   It is further recommended that Defendant's Motion to Strike be denied as well.

In accordance with the Magistrates Act, 28 U.S.C.   § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation.   Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.


 s/Lisa Pupo Lenihan
LISA PUPO LENIHAN
United States Magistrate Judge

Dated: November 21, 2006

cc:      The Honorable Terrence F. McVerry
         United States District Judge

---

22.  This decision is consistent with the general preference for "[t]he question of . . . eligibility [to] be resolved by the plan in the first instance, not by the court."  Grossmuller v. Int'l Union, United Auto.,  Aerospace & Agric. Implement Workers of Am., 715 F.2d 853, 859 (3d Cir. 1983).

21